IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JARED BOEHMKE; and,<br>AMANDA BOEHMKE,<br><br>  Plaintiffs,<br><br>v.<br><br>STUART PONTIAC-CADILLAC, INC.<br>d/b/a STUART NISSAN, an Oklahoma<br>Corporation,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. CIV-21-537-D<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Plaintiffs purchased a used 2017 Nissan Armada from Defendant with the understanding that it had not been in an accident and was a Certified Pre-Owned vehicle. Approximately fifteen months after the purchase, a warning light came on in the vehicle. Plaintiffs took the vehicle to be serviced and discovered that it had significant structural damage indicative of a prior accident. Plaintiffs then filed this lawsuit, asserting claims for fraud, breach of express warranty, breach of contract, violation of the Magnussen-Moss Warranty Act, violation of the Oklahoma Consumer Protection Act, and punitive damages.

Now before the Court is Defendant Stuart Nissan's Motion for Summary Judgment [Doc. No. 16].[1] Plaintiffs have responded in opposition [Doc. No. 21] and Defendant has

---

[1] Defendant's motion is styled as one seeking summary judgment, but its reply brief is styled as one seeking partial summary judgment. As Defendant makes no explicit argument with respect to Plaintiffs' breach of contract claim, the Court assumes it is seeking partial summary judgment.

1

replied [Doc. No. 26]. Because material facts are in dispute, summary judgment is not appropriate.[2]

## FACTUAL BACKGROUND

Stuart Nissan is a car dealership that purchases used vehicles from auctions for resale to the public. Def.'s Br. at ¶¶ 1, 3. On May 17, 2019, either Randy Hamm, the dealership's owner, or Michael Hagen, the dealership's sales manager, purchased a used 2017 Nissan Armada during an online auction hosted by Manheim Riverside. *Id.* at ¶¶ 1-7; Pl.s' Br. at ¶¶ 4-5.

At the time of the auction, Manheim announced that there was structural damage to the Armada. Pl.s' Br. at ¶ 8. Manheim also provided a condition report concerning the vehicle that was available to participants involved in the auction. Def.'s Br. at ¶¶ 8-10; Pl.s' Br. at ¶¶ 8-10. The first page of the Armada's condition report includes icons indicating "Damages," "Structural Damage," and "Prior Paint." Pl.'s Br. at Ex. 4. The following pages of the condition report provide further details on the Armada's condition, including that it suffered structural damage to the left "B" Pillar and left Rocker Panel Inner, previous repair, and substandard orange peel[3] to the left side front door, quarter panel, and rear door. *Id.*

---

[2] Defendant has also filed a Motion to Limit the Testimony of Plaintiffs' Expert Witness [Doc. No. 19]. Portions of Plaintiffs' expert witness report are referenced in their response to Defendant's summary judgment motion. However, because factual disputes exist even without reference to this expert report, it is not necessary to resolve Defendant's Motion to Limit Testimony of Plaintiffs' Expert Witness in advance of ruling on Defendant's summary judgment motion.

[3] Orange peel refers to rough paint on a vehicle and can be an indication that the vehicle needs to be inspected more thoroughly. Pl.s' Br. at ¶ 8.

Mr. Hamm testified that the Armada is not a vehicle he would have bought because they do not normally buy vehicles that have structural damage, other than light hail damage. Def.'s Br., Ex. 1, Hamm Depo at 17:2-22. He further testified that they normally do not purchase vehicles without a clean CARFAX report,[4] but this vehicle did have a clean CARFAX and he thinks that is what Mr. Hagen must have based his purchase on. *Id.* Mr. Hagen similarly testified that they would not normally purchase a vehicle if the condition report showed structural damage. Pl.'s Br., Ex. 3, Hagen Depo at 72:12-21. Mr. Hagen also testified that he would typically research a vehicle's condition by reviewing the condition report and the CARFAX report prior to purchasing. *Id.* at 18:5-20. Mr. Hagan assumes the structural damage on the condition report was overlooked because he would not have purchased the Armada knowing it had structural damage. *Id.* at 73:13-25.

Following the auction, the Armada arrived at Stuart Nissan, but there is some dispute as to what happened next. Stuart Nissan contends that it obtained a CARFAX report showing no prior accidents, confirmed the vehicle's eligibility for the Nissan Certified Pre-Owned ("CPO") vehicle program by entering the VIN into Nissan's online portal, and completed a 167-point CPO inspection that did not uncover anything suggesting the vehicle was involved in a collision. Def.'s Br. at ¶¶ 12-19. Plaintiffs contend that the technician who supposedly performed the CPO inspection has no independent memory of completing the inspection and that Stuart Nissan lacks documentary evidence indicating that a proper

---

[4] CARFAX offers collision and service history report on vehicles. Def.'s Br. at ¶ 11. CARFAX reports include a disclaimer stating that the report is "based only on information supplied to CARFAX" and "other information about this vehicle, including problems, may not have been reported to CARFAX." Pl.s' Br., Ex. 4.

CPO inspection was performed. Pl.s' Br. at ¶¶ 16-19. Plaintiffs further contend that any inspection did not comply with Nissan's CPO guidelines, which instruct inspectors to search for further structural damage if they observe paint overspray or indicators of prior repair or damage. *Id.* Stuart Nissan replaced a broken side mirror, repaired a door, and reconditioned the orange peel paint along the driver's side, but did not investigate the cause of this damage further. *Id.* Plaintiffs also assert that Stuart Nissan failed to complete numerous steps in the CPO inspection process that are required by Nissan, such as checking for prior air bag deployment. Pl.'s Br. at ¶ 18. Pursuant to Nissan's guidelines, a vehicle with structural damage is not eligible for CPO certification. *Id.* at ¶ 15.

Plaintiffs Jared and Amanda Boehmke purchased the Armada from Stuart Nissan with a full dealer warranty and an extended service warranty. Def.'s Br. at ¶¶ 24-25; Pl.'s Br. at ¶ 25. In making the purchase, Plaintiffs contend that they relied on Stuart Nissan's representation that the vehicle was a CPO vehicle that had not been in an accident. Pl.'s Br. at ¶ 26. Stuart Nissan asserts that any statement indicating that the vehicle was accident-free was based on the CARFAX report. Def.'s Br. at ¶¶ 21-22. Stuart Nissan does not make condition reports available to its service or sales personnel, or to its customers. Pl.'s Br. at ¶ 20. Mr. Hamm, Stuart Nissan's owner, testified that they rely on CARFAX reports because the consumer usually wants to see the CARFAX. *Id.* at ¶ 20. Mr. Hagen similarly testified that Stuart Nissan would provide the CARFAX to customers so they have information about the vehicle, but they would never provide a condition report. Hagen Depo at 89:20-92:9.

Nearly fifteen months after purchasing the Armada, a warning light appeared in the vehicle. Def.'s Br. at ¶ 30. Plaintiffs took the vehicle to a Nissan dealership near their home for service. *Id.* at ¶ 32. The service manager at that dealership noted numerous issues with the vehicle that were consistent with a prior accident and refused to perform any warranty work. *Id.* at ¶ 32, 35; Pl.'s Br. at ¶ 32, 35. Plaintiffs reported the problem to Mr. Hamm. Mr. Hamm initially did not believe the service manager's description of the Armada's condition, but offered to repair the vehicle if they returned it to Stuart Nissan. Def.'s Br. at ¶ 33; Pl.'s Br. at ¶ 33. Plaintiffs declined, and this lawsuit followed.

## STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id*. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id*.

## DISCUSSION

**A. Fraud**

Stuart Nissan contends it is entitled to summary judgment on Plaintiffs' fraud claim because there is no evidence showing that it intended to deceive Plaintiffs regarding the Armada's condition. Under Oklahoma law, actual fraud requires proof of four elements: "1) a false material misrepresentation, 2) made as a positive assertion which is either known

5

to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment." *Bowman v. Presley*, 212 P.3d 1210, 1217–18 (Okla. 2009); *see also* Okla. Stat. tit. 15, § 58(2). "The existence of fraud, given evidence for each element, is a question of fact for the jury." *Murray v. D & J Motor Co.*, 958 P.2d 823, 831 (Okla. Civ. App. 1998).

Stuart Nissan does not dispute that it made a false representation regarding the Armada's condition, that the representation was made with the intent that it be relied upon, or that Plaintiffs did in fact rely on the representations in purchasing the vehicle. Instead, focusing on the second element, Stuart Nissan argues that although it may have acted negligently in failing to review the condition report, there is no evidence that it knew its representations were false or that the representations were made recklessly. In making this argument, Stuart Nissan claims that it relied on "three separate checks" to confirm that the vehicle had not been involved in a warranty-voiding accident. But all of these "checks" are subject to factual disputes that preclude summary judgment.

First, Stuart Nissan claims that it reviewed the Armada's CARFAX report, which showed no prior accidents to the vehicle. But (as this case clearly demonstrates) a CARFAX report is not always accurate. There is evidence that Stuart Nissan knew, or should have known, of this possibility because the CARFAX report itself includes a statement disclaiming the completeness of the report. Moreover, there is testimony from Stuart Nissan's management suggesting that – despite the disclaimer and its access to a more complete condition report – Stuart Nissan intentionally chose to rely only on the

CARFAX report in making representations about a vehicle's accident history because that is the only document customers could see.

Second, Stuart Nissan claims that it complied with Nissan's guidelines for determining CPO eligibility, which involves entering a VIN into Nissan's online portal to confirm that that the vehicle meets certain mileage and service requirements. But a vehicle's *eligibility* for CPO certification does equate to *qualification* for CPO certification. Although the Armada may have met the CPO eligibility requirements, Plaintiffs have presented evidence showing that Nissan relies on dealers, like Stuart Nissan, to properly certify vehicles following an inspection and that vehicles with structural damage, like the Armada, are excluded from the CPO program.

Last, Stuart Nissan contends that its service technician performed a 167-point CPO inspection and reported no evidence of a prior collision. But the validity of this inspection is in dispute. Plaintiffs have presented evidence showing that Stuart Nissan lacks certain inspection records that are required to be maintained by the CPO program and that certain aspects of the inspection were not performed properly, including the failure to scrutinize the vehicle further despite replacing the side mirror and door hinge.

Plaintiffs' evidence regarding Stuart Nissan's misrepresentations as to the vehicle's condition, its access to a report disclosing the damage, and its failure to perform a proper CPO inspection is sufficient to raise a question of fact regarding whether Stuart Nissan's statements were "made recklessly without knowledge of the truth." *Bowman*, 212 P.3d at 1217-18. In light of the conflicting evidence, summary judgment is not appropriate as to Plaintiffs' fraud claim.

### B. Oklahoma Consumer Protection Act Claim

Similar to the fraud claim, Stuart Nissan asserts that it is entitled to summary judgment on Plaintiffs' claim under the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751 *et seq.*, because it had no knowledge of the Armada's condition and did not intend to deceive Plaintiffs. Under the Oklahoma Consumer Protection Act, a person engages in an unlawful practice "when, in the course of the person's business, the person: ... [c]ommits an unfair or deceptive trade practice as defined in Section 752 of this title." Okla. Stat. tit. 15, § 753(20). A deceptive trade practice means "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." *Id.* § 752(13). The Act further provides that making "a false or misleading representation, knowingly or with reason to know, as to the…certification of the subject of a consumer transaction" or making "a false representation, knowingly or with reason to know, as to the characteristics…of the subject of a consumer transaction" is unlawful. *Id.* at § 753(2); § 753(5).

For substantially the same reasons explained in part A, Stuart Nissan is not entitled to summary judgment on this claim. There are material factual disputes regarding Stuart Nissan's knowledge of the structural damage and the steps Stuart Nissan took prior to certifying the Armada as a CPO vehicle. When viewed in the light most favorable to Plaintiffs, a reasonable juror could conclude that Stuart Nissan made a misleading representation regarding the vehicle "with reason to know" that it was false. *See Murray*, 958 P.2d at 831-32 (evidence concerning misrepresentations as to used car's condition was sufficient to overcome defendants' demurrer as to OCPA claim); *Robinson v. Sunshine*

8

*Homes, Inc.*, 291 P.3d 628, 633-34 (Okla. Civ. App. 2012) (evidence that defendants failed to tell consumer about damage to mobile home sufficient to overcome motion for directed verdict as to OCPA claim).

### C. Breach of Warranty and Violation of the Magnuson-Moss Warranty Act

Stuart Nissan next contends that it is entitled to summary judgment on Plaintiffs' claims for breach of express warranty and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312. The Magnuson-Moss Warranty Act "creates a private right of action for any 'consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the statute], or under a written warranty, implied warranty, or service contract.'" *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1269 (10th Cir. 2020) (quoting 15 U.S.C. § 2310(d)(1)) (alteration in *Platt*). Claims under the Magnuson-Moss Warranty Act "stand or fall with [a plaintiff's] express and implied warranty claims under state law." *Id.* (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)) (alteration in *Platt*). Therefore, Oklahoma state law regarding express warranty claims guides the disposition of the Magnuson-Moss Warranty Act claim.

Under Oklahoma law, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Okla. Stat. tit. 12A, § 2-313(b). A breach of this "warranty of description" entitles the buyer to certain remedies. *Murray*, 958 P.2d at 829-830.

Stuart Nissan's arguments as to this claim are not well developed, but it appears to be asserting that there was no breach of express warranty or violation of the Magnuson-Moss Warranty Act because Stuart Nissan offered to fix the vehicle. The undisputed facts

9

show that Stuart Nissan sold the Armada to Plaintiffs as a CPO vehicle that was covered by a manufacturer warranty. However, Plaintiffs have presented evidence that the vehicle cannot qualify as a CPO vehicle due to its prior structural damage and that a Nissan dealership near Plaintiffs' residence denied warranty coverage on the vehicle as a result. Thus, at the very least, there are factual disputes regarding whether an express warranty was breached, and summary judgment is therefore not appropriate as to these claims.

### D. Punitive Damages

Last, Stuart Nissan seeks summary judgment as to Plaintiffs' claim for punitive damages. For punitive damages to be allowed under Oklahoma law, "there must be evidence, at a minimum, of reckless disregard toward another's rights from which malice and evil intent may be inferred." *Robinson*, 291 P.3d at 638; *see also* Okla. Stat. tit. 23, § 9.1. The court serves as a gatekeeper and has a "responsibility to determine whether *any competent evidence* exists which would warrant submission of the question of punitive damages to the jury." *Estrada v. Port City Prop. Inc.*, 258 P.3d 495, 503-04 (Okla. 2011) (emphasis in original). Several factors may be considered in awarding punitive damages, including the "duration of the misconduct and any concealment of it," "[t]he attitude and conduct of the defendant upon discovery of the misconduct or hazard," and "the number and level of employees involved in causing or concealing the misconduct." Okla. Stat. tit. 23, § 9.1(A).

Stuart Nissan argues that punitive damages are not available because, at most, it acted negligently and there is no evidence of intentional misconduct. As already discussed,

there is conflicting evidence regarding whether Stuart Nissan acted recklessly, therefore summary judgment is inappropriate on the present record.

## CONCLUSION

For the reasons explained above, Defendant Stuart Nissan's Motion for Summary Judgment [Doc. No. 16] is DENIED.

IT IS SO ORDERED this 3rd day of May, 2022.

TIMOTHY D. DeGIUSTI
Chief United States District Judge